KANSAS LOAN & TRUST CO. v. ELECTRIC RY., LIGHT & POWER CO. OF SEDALIA, MO., et al. (COHEN, Intervener).

(Circuit Court, W. D. Missouri, C. D.   July 14, 1902.)

No. 2,242.

1. MORTGAGE LIEN—IMPROVEMENT BY LESSEE.

A feed wire, placed on the poles of an electric railway by the lessee for its own convenience, and not in lieu of other equipment, its lease requiring that the property be returned in as good condition as when received, was not subject to a prior mortgage with a subsequently acquired property provision, given by the lessor upon all the property and equipment.

Montgomery & Montgomery, for intervener.
Wm. S. Shirk, for receivers.

PHILIPS, District Judge. This cause is submitted upon an agreed statement of facts which it is not necessary to recite. There were two separate mortgages. One was executed by what is, for convenience, denominated the "Sedalia Company," the principal company, a separate corporation, upon all of its property and equipment. The other was executed by the the Sedalia & Brown Springs Company, a separate corporation, upon all of its property and equipment. Each mortgage contained what is known as a "subsequently acquired property provision." It is a well-settled rule of law that under such mortgages all subsequent improvements made upon the mortgaged premises, and all such subsequent attachments made thereto of a permanent character, as between the mortgagor and the mortgagee, become subject to the lien of the mortgage. Harris v. Bridge Co., 33 C. C. A. 69, 90 Fed. 322, loc. cit. 328. This, however, is qualified by the limitation "that the mortgagee of after-acquired property is not a purchaser for value, and cannot acquire an interest by way of lien greater than that which the mortgagor had himself acquired. The lien of the mortgage attaches to after-acquired property in the condition in which the mortgagor takes it from his vendor, and subject to all known liens and equities valid against the vendor, and also subject to all liens or equities valid against the vendee and mortgagor which arise in the act of purchase or acquisition, and therefore necessarily qualify its scope and extent." Harris v. Bridge Co., supra.

It is to be kept in mind that the lessor, the Sedalia & Brown Springs Electric Railway Company, did not furnish the feed wire in question. It was furnished by the Electric Railway, Light & Power Company of Sedalia. The rights, therefore, of the third party furnishing this wire, and its assignee, are to be determined, as between it and the Sedalia & Brown Springs Electric Railway Company and its assignee, by the provisions of the contract of lease between them and the circumstances under which the feed wire was furnished. By the express provisions of the contract of lease between the Brown Springs Company and the Sedalia Company it was clearly intended that the Brown Springs Company was not only to build a railroad by acquiring a right of way, making a roadbed, and putting it on ties and rails, but it was to equip the line in a proper manner, so as to run a car or cars over it by force of electricity, and such equipments as were requisite for such method of operation were to be furnished by the Brown Springs Company. If a single-wire equipment furnished by the Brown Springs Company was not adequate to the operation of the road "in a proper manner," the lessee, after discovering the fact in the actual operation, might well have demanded of the lessor the feed wire; but if, without doing so, it furnished the wire itself, for its own accommodation in the better operation of the road, it would be remarkable if the lessor or its mortgagee could claim this additional equipment, the removal of which by the lessee in no wise impaired the condition of the property at the time the lessee took it.

The Brown Springs Company did equip its lines with an ordinary electric wire for the running of the trolley cars, and it was thus turned over to the Sedalia Company. The obligation of the lessee was not to furnish additional equipments to the road for facilitating its better operation, but the undertaking was "to keep the property of the said party of the first part [the lessor] in first class condition, and to prevent depreciation in the value thereof," and at the termination of the lease it would "restore said property to the full possession of the party of the first part [the lessor] in as good condition as it has received the same." In other words, it was to preserve the property it received in as good condition as it was when it took it, and at the termination of the term of the lease it was required, and only required, to restore to the lessor the property in as good, but not in better, condition than it was when it received it. The Brown Springs Company never bought the feed wire, nor did it put it up; and therefore, as between it and the Sedalia Company, it never acquired title or right to this property in question, unless its remaining on the poles of the Brown Springs line was necessary to put and leave the line in as good condition as it was when the lessee took it.

The general rule of law invoked by the interpleader, in respect of permanent improvements made upon leased property, and placing upon it fixtures which adhere to the freehold, and could not be removed without disruption, and, therefore, inure to the benefit of the landlord, or his mortgagee under a provision of the mortgage covering after-acquired property, it seems to me, has no just application to the facts of this case. The feed wire in question was placed merely upon the poles of the Brown Springs Railroad, not in lien of, or as a substitute for, the equipments placed thereon by the lessor company, but for its own accommodation in the greater facility of operation of the line; and it had a right to remove the same whenever its interests required it, provided it left the leased property in as good condition of equipment as when it received it. Undoubtedly, had the Brown Springs Company purchased this feed wire from the Sedalia Company under a contract to pay therefor, or had it given the Sedalia Company a mortgage on its property to secure the payment of the purchase money therefor, and the wire had been so attached and used in respect of this class and character of property as to become a part and parcel of the freehold, the mortgagee under the Brown Springs mortgage might have held it as against such subsequent vendee or mortgagee. But this equitable principle of law does not apply here, for the reason that the essential facts are wanting on which to predicate an equitable claim. Indeed, under the contract of lease the Sedalia Company never parted with either the title or possession of the feed wire; and it had a right at any time to remove it, as its only obligation was to take, maintain, and restore the leased property in the condition in which it found it. The act of the receivers of this property in inventorying it as of the property of the Brown Springs Company could not affect the rights of the Sedalia Company to this property.

I must, therefore, on the agreed statement of facts, find the issues against the interpleader.